UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------x

KIRYAS JOEL ALLIANCE, CONGREGATION BAIS YOEL
OHEL FEIGE, ZALMAN WALDMAN, MEYER DEUTSCH,
BERNARD TYRNAUER, ISAAC SRUGO, JOSEPH
WALDMAN, MOSHE TENNENBAUM, DAVID WOLNER
and JOEL WALDMAN,

                                          **Plaintiffs,**

-against-

VILLAGE OF KIRYAS JOEL, JACOB REISMAN, Village
Trustee, sued in his official capacity, MOSES GOLDSTEIN,
Village Trustee, sued in his official capacity, JACOB FREUND,
Village Trustee, sued in his official capacity, SAMUEL
LANDAU, Village Trustee, sued in his official capacity,
ABRAHAM WEIDER, Mayor of the Village of Kiryas Joel,
sued in his official capacity, MOSES WITRIOL, Director,
Village of Kiryas Joel Department of Public Safety, sued in his
individual and official capacities, CONGREGATION YETEV
LEV D'SATMAR OF KIRYAS JOEL, DAVID EKSTEIN,
TOWN OF MONROE, and CESAR A. PERALES, sued in his
official capacity as acting New York State Secretary of State,

                                       **Defendants.**

-------------------------------------------------------------------------------x

No. 11-cv-03982(JSR)

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT, MOSES WITRIOL'S,
## MOTION TO DISMISS

**Table of Contents**

TABLE OF AUTHORITIES...................................................................................................ii

PRELIMINARY STATEMENT.............................................................................................1

THE COMPLAINT ..............................................................................................................1

ARGUMENT .......................................................................................................................7

I.    Plaintiffs' Claims for Selective Enforcement of Village Noise and Public Order Ordinances Must Be Dismissed .........................................................................................7

    A.    *Witriol Did Not Enforce Village Ordinances Against the Plaintiffs* .............................8

    B.    *Plaintiffs Do Not Allege Disparate Treatment of Similarly Situated Persons* ..............9

    C.    *Plaintiffs Fail to Sufficiently Plead that Selective Enforcement of the Noise and Public Order Ordinances Were Based on Impermissible Considerations* ...............................9

    D.    *Plaintiffs Lack Standing to Recover for Claims of Parties Not Named*.......................10

II.    Plaintiffs Do Not State a Valid Claim Regarding KJPS Facilitation at the Construction Site    11

III.    Plaintiffs' Claims for Selective Enforcement of the Village Littering Ordinance Must Be Dismissed .........................................................................................................................12

    A.    *The Littering Ordinance Was Not Enforced Against Plaintiffs*....................................12

    B.    *Plaintiffs Were Not Disparately Treated From Similarly Situated Individuals* ..........13

IV.    Plaintiffs Fail to State a Claim Based Upon the KJPS Facilitation of UTA Assaults and Harassment of Dissidents.................................................................................................13

    A.    *Plaintiffs Lack Standing to Bring Suit on Behalf of Rafael Rabinowitz* ....................14

    B.    *Plaintiffs Fail to Plead That Witriol or the KJPS Had Any Obligation to Protect Them* 14

    C.    *Plaintiffs Fail to Plead Disparate Treatment of Similarly Situated Persons*..............16

V.    Plaintiffs Do Not State Any Valid Claim Against Witriol for Disparate Treatment of CYL-KJ and Dissident Events ..........................................................................................16

    A.    *Plaintiffs Lack Standing to Assert Claim of Disparate Treatment*...............................16

    B.    *Plaintiffs Do Not Plead Disparate Treatment of Similarly Situated Persons*.............17

VI.    Plaintiffs Fail to State any Cognizable Claim Against Witriol Regarding the Perlstein Burial 17

VII.    Plaintiffs Fail to State a Valid Equal Protection Claim Regarding Waldman's Arrest ... 17

VIII.    Plaintiffs' Allegations Do Not State a Valid Claim Under the Establishment Clause 18

IX.    Plaintiffs' Section 1985 Conspiracy Claims Must Be Dismissed ...................................18

CONCLUSION...................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1952 (2009)....................................................................... 10, 15

*Bais Yoel Ohel Feige v. Congregation Yetev Lev D'Satmar of Kiryas Joel*, 885 N.Y.S.2d 741 (2d
Dept. 2009)..............................................................................................................................4, 11

*Bais Yoel Ohel Feige v. Congregation Yetev Lev D'Satmar of Kiryas Joel*, 910 N.Y.S.2d 174 (2d
Dept. 2010)..............................................................................................................................4, 11

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ................................................................ 10

*Brady v. Town of Colchester*, 863 F.2d 205, 216-217 (2d Cir. 1988) ...................................... 9, 13

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) ....................................... 19

*Cuffy v. City of New York*, 69 N.Y.2d 255 (N.Y. 1987) ................................................................ 14

*Dawson v. City of New York*, 2001 WL 527469, 5 (SDNY 2001) ................................................. 8

*Emmerling v. Town of Richmond*, 2011 WL 2315167, 1 (2d Cir. 2011) ............................ 8, 10, 15

*Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) ........................................ 8

*Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) ........................................... 9, 13

*Hsu By and Through Hsu v. Roslyn Union Free School Dist. No. 3*, 85 F.3d 839, 866 (2d Cir.
1996)............................................................................................................................................. 18

*Kircher v. City of Jamestown*, 74 N.Y.2d 251, 257, 543, N.E.2d 443, 445 (N.Y. 1989).............. 14

*League of Women Voters of Nassau County v. Nassau County Board of Supervisors*, 737 F.2d 155
(2d Cir. 1984) ...........................................................................................................................11

*Marsh v. State of Alabama*, 326 U.S. 501, 66 S.Ct. 276 (1946) ................................................. 13

*New York Civil Liberties Union v. New York City Transit Authority*, -- F.3d. ----, 2011 WL
2852412, 5 (2d Cir. 2011) ....................................................................................................... 16

*Padberg v. McGrath-McKechnie*, 203 F.Supp.2d 261, 275 (E.D.N.Y. 2002) *aff'd*, 60 Fed. Appx.
861 (2d Cir. 2003) .................................................................................................................11

*Paulsen v. County of Nassau*, 925 F.2d 65 (2d Cir. 1991) ......................................................... 13

*Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)...................................................................... 19

## PRELIMINARY STATEMENT

Plaintiffs filed this action on or about June 24, 2011, seeking damages pursuant to 42 U.S.C. § 1983, 1985 and 1988, and injunctive relief, for the alleged violations of their constitutional rights pursuant to the First and Fourteenth Amendments, which arise from a series of incidents within the Village of Kiryas Joel over the past decade.  Defendant, Moses Witriol, now moves pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), for dismissal of all claims in the Complaint as they pertain to him.

Plaintiffs attempt to assert a case of selective enforcement against Witriol.   However, their case is based on a grab bag of incidents and individuals that are not similarly situated and some individuals who are not even parties to this action.  As will be shown below, plaintiffs have failed to plead any allegations against Witriol for which relief may be granted by this Court.

Defendant, Moses Witriol now moves to dismiss all allegations concerning the above as plaintiffs lack standing to bring claims involving injuries to third persons not similarly named as plaintiffs; fail to state valid claims for equal protection violations as in several instances various Village ordinances were not enforced as against plaintiffs; fail to state a valid claim for equal protection as they do not plead the existence of disparately treated and similarly situated individuals; and for additional reasons as more fully set forth herein.

## THE COMPLAINT

The Village of Kiryas Joel (the "Village") was incorporated in 1977 and established as an enclave for followers of the Satmar Hasidic sect of Judaism.  (*See* First Amended Complaint, ¶ 40-41).  A majority of Kiryas Joel residents are members of Congregational Yetev Lev D'Satmar of Kiryas Joel ("CYL-KJ"), which is led by Grand Rebbe Aron Teitelbaum.  (*See id.* ¶ 44, 45).

1

However, a large minority population of Kiryas Joel residents, do not approve of Aron's role as Grand Rebbe, and his leadership over Congregation Yetev-Lev and the Kiryas Joel Satmar community. (*See id.* ¶ 48-50).   Plaintiffs, who claim to be part of the this minority population, attempt through this case to drag Moses Witriol, the director of Public Safety for Kiryas Joel, into the middle of their dispute concerning leadership.  They use alleged incidents involving non-parties as well as dissimilar incidents to try to paint Mr. Witriol as one who favors the residents of Kiryas Joel who are member of Yetev Lev D'Satmar of Kiryas Joel.

The Village established the office of Kiryas Joel Public Safety ("KJPS") in 1985 as a constabulary service with the status of peace officers and not police officers pursuant to the NYS Penal Law. (*See id.* ¶ 28, 225-228).  Moses Witriol was appointed as Director of KJPS in or about 2001. (*See id.* ¶ 228).  The key reason for establishing the KJPS was to provide services to the residents during the religious observance of the Sabbath and holidays.

Plaintiffs allege that Mr. Witriol selectively enforces the Noise and Public Order ordinances of the village to plaintiffs' detriment. (*See id.* ¶ 104, 234).  However, plaintiffs' complaint fails to show how they were treated any differently from anyone who was similarly situated to them.

Plaintiffs first attempt to utilize allegations of nonfeasance to establish their case of violation of equal protection.  Specifically, plaintiffs allege that KJPS did not respond to plaintiff Joseph Waldman's complaints about CYL-KJ members violating the village Noise ordinance by using loudspeakers on CYL-KJ private property during celebrations. (*See id.* ¶ 105-123).

Notably, the Amended Complaint fails to allege that Mr. Witriol or KJPS enforced the Noise ordinance against Mr. Waldman, any other plaintiff, or any Congregation or celebration that any plaintiff attended.   Neither is it alleged that the ordinances were enforced at the request of a similarly situated individual to Waldman.

2

In a similar vein, plaintiffs seek to recover on a theory of selective enforcement on the grounds that Witriol on two occasions failed to enforce the Village Noise ordinance by permitting CYL-KJ members to drive through the Village announcing protests over loudspeakers. (*See id.* ¶ 124-125). However, plaintiffs do not allege that the Noise ordinance was enforced as against plaintiffs themselves, but merely that it was not enforced against CYL-KJ members.

In fact, plaintiffs advance only two sets of allegations that involved a degree of enforcement of the Village Noise and Public Order ordinances. However, plaintiffs fail to state a cognizable equal protection claims in both instances.

In the first instance, plaintiffs seek redress for alleged injuries to a third party. Specifically, plaintiffs allege that Joel Lieberman drove through the Village streets and used a loudspeaker without a permit to protest the way graves of Jewish persons were being treated in Spain. (*See id.* ¶ 150-160). Plaintiffs alleged that Mr. Lieberman was stopped by an unnamed KJPS officer. (*See id.* ¶ 157). However, Mr. Lieberman is not a party to this action. Moreover, the alleged had nothing to do with Congregational leadership, but, involved an issue in a foreign country.

In the second instance, plaintiffs allege violations of their right to equal protection because the Village "effectively denied" Moshe Tennenbaum's permit application in which he sought to hold a protest gathering. (*See id.* ¶ 139-149). However, this protest was to take place on a "tiny dead-end street" that was mostly residential and also housed the Village's only ambulance service. (*See id.* ¶ 148). Even though the Village Attorney, through a letter to Mr. Tennenbaum, provided alternative locations for the protest in a very close proximity, specifically locations that would not interfere with emergency vehicles or ingress and egress on a residential dead end street, plaintiffs are alleging that they were denied the right to protest. (*See id.* ¶ 148-149, 327).

Plaintiffs attempt to establish a case for the violation of equal protection based on the selective enforcement of the Noise and Public Order Ordinances of the Village by comparing the non-enforcement of a complaint of noise coming from a Congregation during a celebration on its own property to a time, place, and manner restriction of a protest on a residential dead end street that houses the ambulance corps in the Village.    Plaintiffs also attempt to make their case by using allegations of nonfeasance as well as an incident concerning a non-party.  However, as will be shown below, plaintiffs' attempts fail.

Plaintiffs also advance allegations that Witriol and the KJPS facilitated a CYL-KJ "construction blitz" at the property on which the main CYL-KJ synagogue and a residential house, owned by Bais Yoel, sit. (*See id.* ¶ 166, 182-185).   Again plaintiffs allege nonfeasance on behalf of KJPS because it allowed construction on the grounds owned by CYL-KJ to begin before 8:00 a.m., in violation of the Noise Ordinance.  (*See id.* ¶ 185).   Plaintiffs also allege that KJPS arrested plaintiff Waldman for "protecting Bais Yoel's property" at the construction site. (*See id.* ¶ 185-186).   In regard to Waldman's arrest, plaintiffs do not plead that any similarly situated individuals were treated differently.

Further, in prior litigation in New York State Court, it had been established that 1) the property belonging to Bais Yoel is a residence not to be used for religious purposes, 2) that the property surrounding the actual residence building is owned by CYL-KJ, and 3) the residence was ordered closed by the court.    *See id.* ¶ 169, 171; *see also, Bais Yoel Ohel Feige v. Congregation Yetev Lev D'Satmar of Kiryas Joel*, 885 N.Y.S.2d 741 (2d Dept. 2009); *Bais Yoel Ohel Feige v. Congregation Yetev Lev D'Satmar of Kiryas Joel*, 910 N.Y.S.2d 174 (2d Dept. 2010).

Accordingly, the Amended Complaint fails to state an action on violation of equal protection or the free exercise clause.

Plaintiffs allege that KJPS violated their rights to equal protection by failing to protect self-styled "dissidents" from harassment and assaults at the hands of other community members. (*See* First Amended Complaint ¶ 237-291).  Plaintiffs identify two distinct incidents, but fail to state a valid equal protection claim in either instance.

The first set of allegations involved an assault against plaintiff Isaac Srugo and his family as they walked home one night. (S*ee id.* ¶ 238-264).  Plaintiffs allege that a member of the KJPS refused to provide the Srugos with an escort home.  (*See id.* ¶ 258-259).  However, plaintiff Srugo had asked a state police officer for an escort, prior to speaking with the unnamed KJPS officer, and he too had refused to escort the Srugos. (*See id.* ¶ 252-256, 258).  Moreover, it is not alleged that Moses Witriol had any personal involvement in the Srugo incident whatsoever.  As will be discussed more fully herein, plaintiffs also do not allege that similarly situated persons received KJPS escorts, and as such, fail to state a valid equal protection claim.

The second incident involved an assault against non-party Rafael Rabinowitz.  (*See id.* ¶ 265-291).  As a threshold matter, all allegations involving the Rabinowitz incident must be dismissed as plaintiffs lack standing to bring the claims on his behalf.  Even ignoring the inherent standing issue, plaintiffs allege that only the state police were called (presumably responding to a 9-1-1 call) in response to the harassment and assault by third party community members and make no allegation that the KJPS was ever even notified of the incident.  (*See id.* ¶ 268, 286, 289).

Another set of claims allegedly involving KJPS stem from the alleged selective enforcement of the Village Littering ordinance.  However, in their failed attempt to establish an equal protection case, plaintiffs actually go so far as to compare persons leafletting in the village with a person throwing bags of garbage in the street. (*See id.* ¶ 299-306).

5

Specifically, plaintiffs allege that despite the complaint of plaintiff David Wolner, and various non-parties, Witriol and the KJPS do not prevent, stop, or otherwise enforce the Littering ordinance against community members who distribute leaflets along Village streets.  (*See id.* ¶ 302-306, 309, 312-316).  Plaintiffs seemingly claim Witriol selectively enforced the Littering ordinance against the "dissidents" after they threw bags of garbage on the Village streets.  (*See id.* ¶ 317).

Moreover, the Amended Complaint does not even state that Mr. Witriol or the KJPS enforced the Village Littering Ordinance against Mr. Wolner.  It was the New York State Police who arrested Wolner on charges of Disorderly Conduct.  (*See id.* ¶ 319).  The state police arrest was based on a supporting deposition of a non-party who told the state police that he saw Mr. Wolner throw a bag of garbage into the street.  (*See id.* ¶ 318-319).

Plaintiffs' attempt to compare leafletting with the potential hazard of throwing bags of garbage into the street, which resulted in an arrest by the New York State Police, fails to state a claim for a violation of the right to equal protection.  (*See id.* ¶ 300-301, 317).

Finally, plaintiffs advance allegations of general disparate treatment of the "dissidents" at the hands of Witriol and the KJPS.  However, these allegations also fail to state valid claims as they involve parties not named as plaintiffs and do not identify disparate treatment of similarly situated individuals.  Plaintiffs broadly allege, without reference to any specific event or plaintiff herein, that the KJPS often facilitates CYL-KJ gatherings by providing personnel and crowd control equipment but fails to provide similar services and support to "dissident" events.  (*See id.* ¶ 331-332).

It is also alleged that Witriol assaulted and falsely arrested plaintiff Waldman after Waldman was involved in a scuffle among rowdy Kiryas Joel residents.  (*See id.* ¶ 333-335).  Yet

again, plaintiffs do not plead that any similarly situated individuals were treated in a manner differently than Waldman.

Plaintiffs' final allegation involving Witriol is that in his capacity as a volunteer in the EMS and KJPS Director, he refused to deliver the body of Eziel Perlstein from EMS custody for burial in the main CYL-KJ cemetery. (*See id.* ¶ 338-342). However, the Perlsteins are not named as plaintiffs and thus, plaintiffs lack standing to bring these claims. Moreover, plaintiffs allege that Witriol violated Jewish law, which, even if he did, is not actionable in this Court.

## ARGUMENT

### I.     Plaintiffs' Claims for Selective Enforcement of Village Noise and Public Order Ordinances Must Be Dismissed

Based upon the above allegations regarding the Village Noise, Public Order and Littering Ordinances plaintiffs seek to advance claims for violations of their rights to equal protection, as guaranteed by the Fourteenth Amendment. Specifically, they allege that Moses Witriol and the KJPS, as directed by Moses Witriol, selectively enforces Village ordinances to the detriment of plaintiffs. However, plaintiffs fail to state a claim of selective enforcement against Moses Witriol upon which relief may be granted for several reasons.

First, plaintiffs fail to sufficiently plead facts that demonstrate that certain ordinances were actually enforced as against the plaintiffs. Second, plaintiffs fail to adequately plead that persons similarly situated were disparately treated. Third, plaintiffs fail to sufficiently plead facts that plausibly support the inference that the selective treatment of plaintiffs was based on impermissible considerations. Finally, plaintiffs lack standing to advance claims on behalf of selective enforcement against persons not named as plaintiffs in this suit.

*A.*      *Witriol Did Not Enforce Village Ordinances Against the Plaintiffs*

Plaintiffs' selective enforcement claims must be dismissed as they do not plead, in regard to several incidents, that Village Noise and Public Order ordinances were enforced against them. Rather, plaintiffs merely plead that Moses Witriol and the KJPS failed to enforce the ordinances against CYL-KJ members during their celebrations and demonstrations. *See, supra.* ¶ 1-3.

The Second Circuit has held that a violation of the Equal Protection Clause based on selective enforcement is established by demonstrating that: (1) the person compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Emmerling v. Town of Richmond*, 2011 WL 2315167, 1 (2d Cir. 2011), quoting, *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004).

A claim for selective enforcement requires that the plaintiff demonstrate that he was selectively treated.   By its very nature, plaintiffs cannot demonstrate that they were selectively treated by virtue of non-enforcement of Village ordinances against other members of the community that violated said ordinances. *See Dawson v. City of New York*, 2001 WL 527469, 5 (SDNY 2001) (granting summary judgment to defendant on issue of selective enforcement as to two alleged incidents since they did not involve any enforcement action against plaintiff).  Here, plaintiffs at best advance a claim of nonfeasance as against Moses Witriol in failing to enforce the Village Noise and Public Order ordinances against the CYL-KJ and UTA.

Further, while plaintiffs allege that Joel Lieberman was pulled over by the KJPS, at Moses Witriol's direction, and prevented from driving through the town announcing protests over loudspeakers, they lack standing to assert such claims.  As Lieberman is not a named plaintiff, plaintiffs do not have standing to advance a claim on his behalf. As such, there is not a

8

cognizable claim for selective enforcement of the Village Noise and Public Order ordinances by Moses Witriol.

**B.      *Plaintiffs Do Not Allege Disparate Treatment of Similarly Situated Persons***

Plaintiffs' claims for selective enforcement of the Village Noise and Public Order ordinances also fail as they do not plead that similarly situated persons were disparately treated. Specifically, in regard to the claims regarding Witriol and the KJPS' failure to respond to plaintiff Waldman's complaints about the CYL-KJ gatherings and violations of the Noise Ordinances plaintiffs do not allege that the ordinances would have been enforced at the request of another resident whose situation was similar to that of plaintiffs'. *See Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994); *Brady v. Town of Colchester*, 863 F.2d 205, 216-217 (2d Cir. 1988). Plaintiffs also do not allege that that Witriol or the KJPS enforced the village Noise Ordinance against a gathering on the property of a congregation favored by plaintiffs.

As to the claims regarding Tennenbaum's permit application, plaintiffs do not identify any similarly situated persons who were granted a permit. Plaintiffs do not allege that the Village has ever granted a permit to people seeking to protest along similar dead end residential cul-de-sacs. In addition, there is no situational similarities when comparing the use of a loudspeaker on a congregation's own property during celebrations to a protest on a dead end street upon which lies the village ambulance station. As such, plaintiffs do not state a valid equal protection claim as they do not point to disparate treatment of any similarly situated persons.

**C.      *Plaintiffs Fail to Sufficiently Plead that Selective Enforcement of the Noise and Public Order Ordinances Were Based on Impermissible Considerations***

Plaintiffs also fail to state a valid claim of selective enforcement as they insufficiently plead factual allegations plausibly suggesting that Moses Witriol, individually, and through the

KJPS, selectively enforced the Noise and Public Order ordinances based upon impermissible considerations.  Courts have held that impermissible considerations include "race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Emmerling, supra.*

Plaintiffs, in a conclusory fashion allege that the KJPS misuses its law enforcement authority to selectively enforce laws for the purpose of advancing CYL-KJ's agenda and repress dissidents based upon their religious beliefs.   (Complaint ¶ 4-5).   However, threadbare allegations advanced merely to serve as a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  More specifically, plaintiffs conclusory allegations fail to nudge the claims of selective enforcement based upon plaintiffs' religion "across the line from conceivable to plausible." *Id.,* 570.  As such the claims of selective enforcement by Witriol of the Village Noise and Public Order ordinances must be dismissed as the "complaint does not contain any factual allegation sufficient to plausibly suggest [Witriol's] discriminatory state of mind," or in this case, any impermissible consideration. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1952 (2009).

D.  *Plaintiffs Lack Standing to Recover for Claims of Parties Not Named*

As briefly mentioned above, the Complaint references Joel Lieberman, who is not named as a plaintiff, and as such, plaintiffs lack standing to recover for claims based upon alleged violations of his rights.   Moreover, it is not pleaded that Lieberman is a member of the KJ Alliance or Congregation Bais Yoel, as such, the organizational plaintiffs cannot bring suit on his behalf in a representational capacity.

The organizational plaintiffs lack standing to bring suit in a representational capacity under Section 1983.  It is settled Second Circuit law that Section 1983 claims are personal and —

with the exception of actions seeking redress for violations of the First Amendment right of association (not alleged here) — may not be brought by an organization in a representational capacity. *See League of Women Voters of Nassau County v. Nassau County Board of Supervisors*, 737 F.2d 155 (2d Cir. 1984). Even if representational standing were available — and it is not — the organizational plaintiffs would lack standing given the absence of any allegation that they were bringing suit in a representational capacity. *See Padberg v. McGrath-McKechnie*, 203 F.Supp.2d 261, 275 (E.D.N.Y. 2002) *aff'd*, 60 Fed. Appx. 861 (2d Cir. 2003). Plaintiffs fail to assert any cause of action alleging a violation of their right to freely associate.

For these reasons, all claims involving injuries to Joel Lieberman must be dismissed.

## II. Plaintiffs Do Not State a Valid Claim Regarding KJPS Facilitation at the Construction Site

Plaintiffs' claims seeking redress for the KJPS and Moses Witriol's facilitation of CYL-KJ's destruction of Bais Yoel's property are barred by res judicata. To the extent that plaintiffs' claims regarding the destruction of property implicate the Free Exercise Clause they cannot stand as two separate judgments have established that the property is a residence, and not a house of worship. *See Bais Yoel Ohel Feige v. Congregation Yetev Lev D'Satmar of Kiryas Joel*, 885 N.Y.S.2d 741 (2d Dept. 2009); *Bais Yoel Ohel Feige v. Congregation Yetev Lev D'Satmar of Kiryas Joel*, 910 N.Y.S.2d 174 (2d Dept. 2010). Plaintiffs concede in the Complaint that the prior decisions enjoined them from using the property for anything other than residential use. (*See* Complaint ¶ 168-171). As such, plaintiffs allegations that they sustained injuries while 'protecting' Bais Yoel property cannot give rise to a violation of the Free Exercise clause as 'protecting' a house from feared destruction does not implicate the exercise of religion.

Lastly, plaintiffs' allegations do not state a valid selective enforcement claim against Moses Witriol for facilitating CYL-KJ's "construction blitz" before 8 a.m., which is prohibited

by the Village Noise ordinance.  As argued at length above, a valid selective enforcement claim does not lie where plaintiffs merely allege a failure to enforce against third persons and there is no similar enforcement action against plaintiffs themselves.  *See supra.* Section I (A).

### III.   Plaintiffs' Claims for Selective Enforcement of the Village Littering Ordinance Must Be Dismissed

Plaintiffs' claims for selective enforcement of the Village Littering ordinance also does not state a claim for which relief may be granted as against Moses Witriol for many of the reasons discussed above.  First, plaintiffs fail to sufficiently plead that Witriol or the KJPS upon Witriol's direction actually enforced the Littering ordinance against them.  Second, plaintiffs do not identify any similarly situated individuals that were treated differently than plaintiffs under the Littering ordinance.

### A.   *The Littering Ordinance Was Not Enforced Against Plaintiffs*

Plaintiffs allege that Witriol individually, and through the KJPS, did not enforce the Littering ordinance against CYL-KJ leafletters.  As demonstrated above, a failure to enforce does not give rise to a valid selective enforcement claim.  *See supra.* Section I (A).

Plaintiffs seemingly allege that the Littering Ordinance was selectively enforced as against them, specifically against David Wolner.  However, review of the facts as presented in the Complaint reveals the Littering Ordinance was not enforced against plaintiffs at all in regard to the garbage throwing incident.  Instead, plaintiffs state that Wolner was arrested by the State Police and charged with disorderly conduct.  The arrest was based upon a complaint supported by a deposition of Joel Frankel.  (*See* Amended Complaint ¶ 318.)  Plaintiffs do not allege that Wolner was arrested or cited for violation of the Village Littering ordinance.  Nor do they allege any action taken by Witriol or the KJPS in enforcing the Littering ordinance whatsoever against Wolner or the garbage throwing dissidents.

12

**B.**     *Plaintiffs Were Not Disparately Treated From Similarly Situated Individuals*

Similarly, plaintiffs do not state a valid equal protection claim regarding UTA leafleting as they do not allege that the Littering Ordinance would have been enforced as against the leafletters at the request of another resident similarly situated to plaintiffs. *See Gagliardi, supra.*; *Brady, supra.*

Second, plaintiffs do not identify any similarly situated individuals who were treated differently.   They do not allege that the Littering ordinance has been enforced against any leafleting dissidents.  Instead, plaintiffs attempt to draw parallels between the leafletters and the garbage bag throwing dissident protesters; but the groups are not similarly situated.  Courts have long applied a quantum of First Amendment protection to leafleting. *See Paulsen v. County of Nassau*, 925 F.2d 65 (2d Cir. 1991); *Marsh v. State of Alabama*, 326 U.S. 501, 66 S.Ct. 276 (1946).  Research has not revealed any First Amendment protection afforded to garbage throwing, let alone garbage throwing into public streets impairing vehicular traffic and creating a public hazard.  In fact, the complaint states that so called "dissidents" threw garbage into the streets to coerce the Village to clean the streets and thus pick up the leaflets.  The differing treatment under the First Amendment and the actions taken at their face can lead to no conclusion but that they are distinct.  The perpetrators are not similarly situated and plaintiffs fail to state a claim for selective enforcement of the Littering Ordinance by Witriol.

**IV.**     **Plaintiffs Fail to State a Claim Based Upon the KJPS Facilitation of UTA Assaults and Harassment of Dissidents**

As set forth at pages 5 and 6 above, plaintiffs seek to recover for the failure of Witriol and the KJPS, at Witriol's direction, to protect plaintiffs and persons not parties in this action from harassment and assault by third persons.  Plaintiffs' claims against Witriol regarding nonfeasance in providing police protection must be dismissed.

13

First, plaintiffs' allegations involve claims of injuries to Rafael Rabinowitz who is not named as a plaintiff in this action, and therefore, plaintiffs lack standing to recover for any injuries he sustained. Second, plaintiffs allege that the KJPS, at Moses Witriol's direction, failed to intervene and protect the 'dissidents' from harassment by other members of the community but does not plead that any special relationship or special duty confers upon Witriol or the KJPS an obligation to protect. *See Cuffy v. City of New York*, 69 N.Y.2d 255 (N.Y. 1987). Third, if plaintiffs' claims are interpreted as alleging a violation of their rights to equal protection, they must fail as plaintiffs do not allege that any similarly situated persons received the benefit of KJPS protection from harassment or assaults.

### A.   *Plaintiffs Lack Standing to Bring Suit on Behalf of Rafael Rabinowitz*

For the reasons set forth in Section I (D) above, both the individually named and organizational plaintiffs lack standing to advance claims regarding injuries to non-party Rafael Rabinowitz.

### B.   *Plaintiffs Fail to Plead That Witriol or the KJPS Had Any Obligation to Protect Them*

It is well established under New York State law that in order to recover upon a theory that the police failed to respond or protect an individual, a plaintiff must establish the existence of a special relationship between the plaintiff and the police in which the injured party relied upon a promise of protection to their detriment. *See Kircher v. City of Jamestown*, 74 N.Y.2d 251, 257, 543, N.E.2d 443, 445 (N.Y. 1989). The New York Court of Appeals has consistently held that a municipality's duty to provide police protection is ordinarily owed to the public at large and not to a specific person or class. *See id.* at 256; *citing, Cuffy, supra., 260*. Here, plaintiffs do not allege that any special relationship existed between them and Witriol or the KJPS, and further, as a threshold matter, do not allege that Witriol promised to protect them from harassment and

14

assault by other community members.  Thus, plaintiffs do not plead any facts upon which a special relationship could be inferred.  In fact, plaintiff Srugo requested that a KJPS officer escort him and his family home, but the officer declined to do so.   No special relationship existed between Witriol and Srugo that could give rise to liability.

Moreover, plaintiffs state that before speaking with a KJPS officer Srugo asked a state police officer for an escort home and the state police officer refused to do so.  Plaintiffs' claims based on a lack of police protection fail and must be dismissed.  Moreover, there is no indication in the Complaint that Witriol was involved whatsoever in the Srugo incident.

Plaintiffs further fail to plead facts sufficient to plausibly suggest that the unnamed KJPS officer's refusal to escort the Srugos home was based upon impermissible considerations, the second necessary element to a valid claim of selective enforcement.  *See Emmerling, supra*.  No facts are alleged that suggest that an officer refused to escort the Srugos because they label themselves dissidents, nor is it even alleged that the officer had knowledge that the Srugos styled themselves as dissidents.  As mentioned above, the state police acted in precisely the same way as the KJPS officer in declining to escort the Srugos and as such it is pure conjecture and surmise that the officer harbored an impermissible consideration which motivated his refusal to escort the Srugos.  Such speculative assertions are not entitled to the presumption of truth on a motion to dismiss.  *See Iqbal, supra*.

Should the Court find that plaintiffs do have standing to bring claims regarding the assault on Rabinowitz, they must be dismissed as they fail to establish any obligation on behalf of Witriol or the KJPS to protect or respond.  Plaintiffs do not allege that Witriol or the KJPS was notified of the incident.  Instead, the dissidents called the state police and advised them of the assault.

C.    *Plaintiffs Fail to Plead Disparate Treatment of Similarly Situated Persons*

Plaintiffs' claims, if interpreted as advancing violations of equal protection, must also fail as they do not plead that any similarly situated persons received police protection from harassment and assault.  Since plaintiffs fail to plead the disparate treatment of similarly situated individuals they fail to state an equal protection claim.

V.    **Plaintiffs Do Not State Any Valid Claim Against Witriol for Disparate Treatment of CYL-KJ and Dissident Events**

As outlined above at page 7 plaintiffs claim that Moses Witriol, individually and through the KJPS, disparately treated dissidents and unfairly favored CYL-KJ members through facilitating CYL-KJ events while not supporting similar dissident events. These claims must be dismissed as the plaintiffs lack standing to assert them, and plaintiffs fail to plead disparate treatment of similarly situated organizations.

A.    *Plaintiffs Lack Standing to Assert Claim of Disparate Treatment*

First, plaintiffs lack standing to bring claims of disparate treatment in the facilitation and support of CYL-KJ and dissident events.  The individual plaintiffs lack standing as they have not demonstrated any actual or imminent threat of particularized injury in fact due to Witriol's failure, individually and through the direction of the KJPS, to provide equal services to dissident events and failure to prevent members of the community from disrupting such events.  *See New York Civil Liberties Union v. New York City Transit Authority*, -- F.3d. ----, 2011 WL 2852412, 5 (2d Cir. 2011) (as to the Article III standing requirements).

Organizations bringing suit on their own behalf must meet the same standing requirements as applied to individuals.  *Id.*  Likewise, the organization plaintiffs lack standing as they do not allege to have sustained any particularized injury as a result of the KJPS denial to provide similar personnel and services to "dissident" events.

16

**B.** *Plaintiffs Do Not Plead Disparate Treatment of Similarly Situated Persons*

To the extent that plaintiffs claim that Witriol and the KJPS failed to provide crowd control services to dissident gatherings violates their equal protection rights they must also be dismissed as plaintiffs fail to adequately plead disparate treatment of any similarly situated persons. Plaintiffs' allegations are limited to two paragraphs of the Complaint at 331 and 332, both of which are entirely conclusory in nature and fail to demonstrate that the parties that were allegedly denied such services were, in fact, similarly situated. Indeed, plaintiffs do not even bother to identify the supposedly similarly situated 'dissidents,' raising the question of whether any of these individuals or organizations are parties or whether (once again) plaintiffs are raising claims on behalf of non-parties – claims which they lack standing to pursue.

## VI.   Plaintiffs Fail to State any Cognizable Claim Against Witriol Regarding the Perlstein Burial

Plaintiffs allege that Witriol, in his capacity as Director of KJPS and capacity as a member of the EMS, refused to deliver the body of Eziel Perlstein from EMS's custody for burial the main CYL-KJ cemetery in Kiryas Joel until the Perlstein family complied with certain conditions. Plaintiffs' claims must be dismissed as they lack standing to assert the claims on behalf of the Perlsteins. As set forth in Section I (D) above, plaintiffs lack standing to assert claims based on injuries to non-party third persons. The Perlsteins are not named as plaintiffs, nor are the organizational plaintiffs bringing suit in a representational capacity.

Moreover, plaintiffs do not allege that Witriol's actions violated any constitutional right of the plaintiffs, instead referencing only violations of Jewish law. Respectfully, plaintiffs' claims regarding the Perlstein incident must be dismissed.

## VII.   Plaintiffs Fail to State a Valid Equal Protection Claim Regarding Waldman's Arrest

17

As detailed at page 7 herein, and paragraphs 333-334 in the Complaint, plaintiff Waldman alleges that he was subjected to disparate treatment when he was assaulted by Witriol and the KJPS and subsequently arrested by the state police for his involvement in a scuffle.  As set forth plaintiffs fail to state a valid equal protection claim as they do not plead that similarly situated individuals were treated differently.

### VIII.   Plaintiffs' Allegations Do Not State a Valid Claim Under the Establishment Clause

Plaintiffs do not clearly plead that the alleged selective enforcement by Witriol of Village Noise, Public Order, and Littering ordinances amount to violations of the First Amendment Establishment Clause.  However, even if this Court infers such claims to be present, the plaintiffs fail to state a claim for which relief may be granted.  Specifically, plaintiffs fail to allege any state action which constitutes endorsement of religion, but instead allege that state inaction allowed CYL-KJ members to advance their religious beliefs, which does not give rise to a violation of the Establishment Clause.  *Hsu By and Through Hsu v. Roslyn Union Free School Dist. No. 3*, 85 F.3d 839, 866 (2d Cir. 1996), *cert. denied, Roslyn Union Free School Dist. No. 3 v. Hsu By and Through Hsu*, 519 U.S. 1040, 117 S.Ct. 608 (1996).

### IX.   Plaintiffs' Section 1985 Conspiracy Claims Must Be Dismissed

Plaintiffs further allege that Moses Witriol conspired with CYL-KJ to violate plaintiffs' rights under the equal protection clause.  (*See* Complaint at Count II).  Plaintiffs allegations fail to meet the particularized pleading requirements under 42 U.S.C. 1985 and must be dismissed.  "In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or

property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007).  Additionally, the conspiracy must be motivated by some invidious discriminatory animus.  *Id.*

Plaintiffs fail to adequately plead even the existence of a conspiracy between Witriol and CYL-KJ defendants.  Rather, plaintiffs advance only threadbare conclusory allegations that such a conspiracy exists.  *See* Complaint ¶ 407).  This is insufficient.  The Second Circuit has held that a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).  As plaintiffs fail to identify any factual basis for the existence of the alleged conspiracy, the § 1985 claim must be dismissed.

## CONCLUSION

For the foregoing reasons, all claims and allegations in the Complaint should be dismissed as against Moses Witriol.

Dated: New York, New York
       August 1, 2011

                                        MORRIS DUFFY ALONSO & FALEY

                                        By: ___/s/ Carl S. Sandel_____
                                            Carl S. Sandel (CS3594)
                                            Drew W. Sumner (DS4416)

                                        Two Rector Street, 22nd Floor
                                        New York, New York 10006
                                        (212) 766-1888

                                        *Attorneys for Moses Witriol*

property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007). Additionally, the conspiracy must be motivated by some invidious discriminatory animus. *Id.*

Plaintiffs fail to adequately plead even the existence of a conspiracy between Witriol and CYL-KJ defendants. Rather, plaintiffs advance only threadbare conclusory allegations that such a conspiracy exists. *See* Complaint ¶ 407). This is insufficient. The Second Circuit has held that a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). As plaintiffs fail to identify any factual basis for the existence of the alleged conspiracy, the § 1985 claim must be dismissed.

## CONCLUSION

For the foregoing reasons, all claims and allegations in the Complaint should be dismissed as against Moses Witriol.

Dated: New York, New York
August 1, 2011

MORRIS DUFFY ALONSO & FALEY

By: _____
Carl S. Sandel (CS3594)
Drew W. Sumner (DS4416)

Two Rector Street, 22nd Floor
New York, New York 10006
(212) 766-1888

*Attorneys for Moses Witriol*

19