UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
KIRYAS JOEL ALLIANCE, et al.,          :
                                       :        11 Civ. 3982 (JSR)
               Plaintiffs,             :
                                       :        OPINION AND ORDER
          -v-                          :
                                       :
VILLAGE OF KIRYAS JOEL, et al.,        :
                                       
               Defendant.              
------------------------------------ 

JED S. RAKOFF, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/29/11

     Plaintiffs, members of a "dissident" population within defendant

Village of Kiryas Joel (the "Village"), bring this action alleging

that the Village is a "theocracy," the affairs of which are so

"inherently infused by, and entangled, with religion" that its "very

existence" violates the Establishment Clause of the First Amendment.

See Amended Complaint ("Am. Compl.") ¶ 1.  In particular, plaintiffs

allege that the Village is subject to the dictates of defendant

Congregation Yetev Lev D' Satmar of Kiryas Joel ("Congregation

Yetev").  Moreover, plaintiffs allege that a law requiring all

buildings to have a "community room" (the "Community Room Law")

violates the Establishment Clause because the purpose and effect of

the law are to promote religion.  Plaintiffs also allege that they

have been discriminated against and repressed by the Village on the

basis of their dissident views in a variety of ways, including:

1

excess municipal fees, reduced police protection, and disparate enforcement of public speech and zoning ordinances.

On the bases of these allegations, the Amended Complaint asserts five claims: Violation of the Equal Protection Clause; Conspiracy to Violate the Equal Protection Clause; Violation of the Free Exercise Clause; Violation of the Establishment Clause; Violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq.

The various defendants (eleven in all) have filed five separate motions to dismiss.  After full consideration of the parties' written submissions and oral arguments, the Court grants the motions.[1]  As a result, all claims are dismissed with prejudice, except for the Establishment Clause claim relating to the Community Room Law.  This latter claim is dismissed without prejudice to plaintiffs' filing a Second Amended complaint that attempts to cure the deficiencies identified herein.

For purposes of a motion to dismiss, the Court "accept[s] all well-pleaded allegations in the complaint as true [and] draw[s] all reasonable inferences in the plaintiff's favor."  S.E.C. v. Gabelli, 653 F.3d 49 (2d Cir. 2011)(quoting Operating Local 649 Annuity Trust

---

[1] By stipulation dated August 30, 2011, plaintiffs voluntarily dismissed the New York Secretary of State from the action. Plaintiffs also voluntarily withdrew their "official capacity" claims against defendants Reisman, Goldstein, Freund, Landau, and Weider.  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Mem.") at 64.  Finally, plaintiffs requested leave to amend their complaint to name Mayor Abraham Weider in his individual capacity, id., but, as a result of the Court's instant decision, that request is moot.

Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010)).
The pertinent allegations, taken from the Amended Complaint, from
documents expressly referenced in that complaint, and from materials
in the public record that are subject to judicial notice, are as
follows:

The Village of Kiryas Joel is an enclave located within the Town
of Monroe in Orange County, New York.  It was incorporated as a
municipality in 1977 by the late Grand Rebbe of Satmar Hasidism, Joel
Teitelbaum.  Am. Compl. ¶¶ 39-41.  Although the Village was created
as an enclave for the Satmar Hasidim and remains populated almost
exclusively by followers of Satmar Hasidism, a significant rift
exists between two Satmar factions in the Village, namely the members
of the Village's main congregation and the so-called "dissident"
population.  The schism primarily stems from a dispute over who
should be the proper leader of the Satmar Hasidim.  Id. ¶¶ 2, 41, 44-
45, 48-59.  The dissidents do not "approve of" the leadership of the
current Grand Rebbe, Aron Teitelbaum.  Id. ¶ 48.  Instead, many of
the dissidents believe that Aron's brother Zalman should be "running
[Congregation Yetev] instead of Aaron."  Id. ¶ 49. The Village has
approximately 20,000 residents; roughly 8,000 of those residents
share the plaintiffs' "dissident" views.  Id. ¶¶ 11-20, 41.

Defendant Abraham Weider is the Village's Mayor; he also serves
as "Rosh H'Khal" or "Head of the Congregation" of Congregation Yetev.

3

Id. ¶¶ 26-27, 30, 53.  Moreover, "every other elected and appointed
Village official" is allegedly a member of Congregation Yetev.
Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to
Dismiss ("Pl. Mem.") at 4.  Defendant Moses Witriol, also a member of
Congregation Yetev, is the Director of the Village of Kiryas Joel
Department of Public Safety.  Am. Compl. ¶ 190.

The rift between the two Satmar factions has spawned repeated
litigation in state and federal courts over the past two decades.
See, e.g., Board of Educ. of Kiryas Joel Village School District v.
Grumet, 512 U.S. 687 (1994).  The Second Circuit has noted that some
of the dissidents' previous allegations, are "deeply troubling in
that, if true, [they] describe[] a town in which public institutions
are routinely being used as instruments of the dominant religious
group." Waldman v. Village of Kiryas Joel, 207 F.3d 105, 107 (2d
Cir. 2000).

The Amended Complaint further contends that the Village violated
both plaintiffs' constitutional rights and their rights under RLUIPA
by "thwarting" dissident congregation Bais Yoel's attempts to use a
piece of residential property as a synagogue (the "Property,").  Am.
Compl. ¶¶ 165, 173.  The Property is an apartment annexed to
Congregation Yetev's Grand Synagogue.  It was originally built in
1975 to house the late Grand Rabbi Joel Teitelbaum and his spouse,
Feige Teitelbaum (or the "Rebitzon").  Feige continued to live in the

apartment until her death in 2001. Before her death, however, and after Joel Teitelbaum's death in 1979, she conveyed her interest in the Property to Bais Yoel. See Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp., 192 A.D.2d 501, 596 N.Y.S.2d 435 (2d Dep't. 1993)(per curiam) (upholding Feige's conveyance in a suit brought by Congregation Yetev to invalidate it). The transfer was akin to conveying a small wing of a house. In other words, Bais Yoel owns a "footprint" of real property within the Grand Synagogue's grounds -- it does not own any of its surrounding lands nor any easements to accommodate parking access and utilities thereon. See id.

After the Rebitzon's death, Bais Yoel began using the Property to hold religious services. See Am. Compl. ¶¶ 167-69. By 2004, the Property was operating as a large-scale house of worship, with more than 300 persons visiting the Property on a daily basis. See Gimbel Decl. Ex. B, ("Bais Yael I Decision," dated Jan. 24, 2008) (unreported). However, after a trial in New York Supreme Court, that court held that the Property could only be used for residential purposes unless Bais Yoel applied for and received municipal approval to use it for religious purposes. See id. The court further held that any municipal approval of the residence for religious services would require Congregation Yetev's permission, as well as Congregation Yetev's agreement to expand the scope of ingress, egress, and utility easements appurtenant to the property -- all of

which were then limited to residential use. Id. at 5-6. The
decision was affirmed on appeal, with modifications not material to
this litigation. See Bais Yael Ohel Feige v. Congo Yetev Lev D'Satmar
of Kiryas Joel, Inc., 885 N.Y.S.2d 741 (2d Dep't 2009) (per curiam).

     After Bais Yoel I was decided, plaintiffs continued to use the
Property for religious services. Accordingly, by order dated
November 30, 2009, Justice Owen of New York State Supreme Court held
Bais Yoel, Zalman Waldman, Bernard Tyrnauer, and Meyer Deutsch in
contempt for violating the trial court's judgment and continuing to
use the Property "as a non-conforming, unlawful house of worship
without municipal approval, and [failing] to satisfactorily excuse or
explain said contempt." Gimbel Decl. Ex. C, Order dated Nov. 30,
2009, (Bais Yoel I "Contempt Order"). The Contempt Order stated that
"plaintiffs' blatant disregard for the judicial system is so evident
at this point that the Court believes the only appropriate remedy is
to order full closure of the subject premises and, absent compliance,
incarceration of those individuals responsible." Id. at 3. The
Order was affirmed on appeal. See Bais Yael Ohel Feige v. Congo Yetev
Lev D'Satmar of Kiryas Joel, Inc., 910 N.Y.S.2d 174, 175 (2d Dep't
2010)(per curiam).

     Subsequently, plaintiffs filed a second state court action
against Congregation Yetev and the Village, Bais Yael Ohel Feige v.
Congo Yetev Lev D'Satmar of Kiryas Joel, No. 5655-2010 (N.Y. Sup.

Ct.)("Bais Yoel II").   Less than two weeks after Bais Yoel II was
filed, Congregation Yetev began a construction project to expand and
repave the parking lot outside its Grand Synagogue.   See Am. Compl.
¶¶ 186-98.   This "construction blitz ripped up the cartilage of the
property, including a historic stone walkway, tore apart fencing,
destroyed part of the porch and other structures and ripped down
utility wires running to the building."   Pl. Mem. at 53; Am. Compl. ¶
183.   Officers of the KJPS were present for the operation and
arrested several dissidents, including plaintiff Waldman, for
attempting to obstruct the construction project.   Am. Compl. ¶¶ 186-
98.   Plaintiffs immediately brought the construction project to the
state court's attention, and successfully brought allegations related
to the "blitz" into that litigation.   See Crowley Decl. Ex. I at 20
(transcript of hearing on June 7, 2010).   The Court granted the
plaintiffs' request for a Temporary Restraining Order preventing
further work on the construction project; the Second Department,
however, lifted the TRO on appeal.   See Crowley Decl. Exs I, L, M, N,
O, P, R, S & T.

     The Amended Complaint also alleges that the Village selectively
enforces public speech ordinances so as to promote Congregation Yetev
and discriminate against dissident views.   Am. Compl. ¶¶ 100-60, 323-
28.   On at least two occasions, Moses Witriol and the KJPS allegedly
refused to intervene to prevent Congregation Yetev from playing loud

music at night through loudspeakers at its Grand Synagogue.  Id. ¶¶
105-111.  This loud music playing allegedly violated a local noise
ordinance.  Id.  On several occasions, Witriol also "escorted a
truck, which was broadcasting 'anti-dissident' announcements, around
the Village."  Id. ¶ 128.  During the same time period, Joel
Lieberman, a non-party dissident, was "prohibited from announcing a
protest" -- by driving a truck with loudspeakers -- regarding "the
Spanish government's treatment of Jewish graves in Spain."  Id. ¶
150.

Moreover, in November 2009, the Village denied plaintiff
Tennenbaum and a group of dissidents a permit to hold a protest
against Grand Rebbe Aron Teitelbaum in front of Teitelbaum's house.
Id. ¶¶ 138-49.  The Village denied Tennenbaum's permit application
because, it said, the house was on a "dead-end street which also
houses the only ambulance service in the Village, which is dependent
on open ingress and egress to serve the needs of the Village."  Id. ¶
148.  Instead, the Village proposed that Tennenbaum "consider
locations where your groups has [sic] already held past protests:
along Forest or Bakertown Roads or even Acres Road. Your group has
had many protests exercising its First Amendment rights along these
locations without any interference from the Village."  Id.

Next, the Amended Complaint alleges that the Kiryas Joel
Department of Public Safety ("KJPS"), the Village's law enforcement

arm, and Witriol, the Director of the KJPS, have "selectively-enforced" the law so as to "repress the dissidents." Am. Compl. ¶ 229; see id. ¶¶ 225-34.  In support, plaintiffs allege that KJPS permitted schoolchildren from the United Talmudical Academy ("UTA"), the Village's private religious school, which is affiliated with Congregation Yetev, to "blanket the Village streets with hostile and harassing leaflets that contain the names, pictures and phone numbers of 'dissidents' who have married, or intend to marry . . . without the Grand Rebbe's approval." Pl. Mem. at 51; Am. Compl. ¶¶ 292-321. The dissidents went out themselves at night to clean up the leaflets, because they were not cleaned up by the KJPS.  Id. ¶ 307.  In response to this state of affairs, some dissidents "threw garbage on the streets to coerce the Village to clean everything up." Id. ¶ 317.  Plaintiff David Wolner was accused of being one of the garbage-throwers, an allegation which he denies; he was later charged with disorderly conduct.  Id. ¶¶ 318-20.

In addition, "mobs of hundreds of UTA boys" assaulted two dissidents -- plaintiff Isaac Srugo and non-party Rafael Rabinowitz. Id. ¶ 236.  Plaintiffs allege that both incidents were caused by the KJPS because the UTA students "knew that KJPS, as an instrumentality of the [Congregation Yetev]-run Village government, supported their missions" and so would not intervene to protect dissidents. See Pl. Mem. at 50.  Plaintiff Kiryas Joel Alliance has allegedly been forced

to hire private security to protect its members because of KJPS's
refusal to protect them from such harassment.   Am. Compl. ¶ 241.

    Plaintiffs also allege that the Village, through its Community
Room Law, uses its governmental authority to divert funds and
resources to Congregation Yetev.   The Village enacted the Community
Room Law in 2007; it requires all building developers to construct a
community room as a condition of obtaining Planning Board approval
for new residential construction.   Id. ¶¶ 348-49.   The law imposes
strict conditions on the operation of community rooms and requires
developers to submit an "operational plan," that ensures "the
perpetual continuing availability and use of the community room or
rooms for recreational, community, charitable, civic or other uses."
Id. ¶ 350.   Under the law, if a developer finds it unfeasible to
build a community room, he must pay a fee of "not less than $5,000
per unit" to the Village, which is deposited into a "community room
fund" used solely for the provision of community rooms in the
Village.   Id. ¶ 351.

    With one exception, all of the community rooms are allegedly
used as synagogues and run by Congregation Yetev.   Id. ¶¶ 352, 355.
The exception is a community room which was recently built by a
dissident developer.   The Village initially refused to grant a
Certificate of Occupancy to its builder, non-party Prag Realty, which
is managed by non-party Lipa Deutsch, and sought to require the

10

developer to pay the $5,000 per unit fee. Id. ¶¶ 357-62. The
Village asserted that it assessed the fee because the community room
did not meet the legal specifications for such rooms, but plaintiffs
allege that the fee was assessed because Prag Realty did not intend
to use the community room as a synagogue. Id. After Prag Realty
retained counsel to dispute the Village's fee determination, however,
the Village reversed its position and granted Prag Realty the
Certificate of Occupancy without charging a fee. Id. ¶ 362.

    Against the background of these diverse allegations, the Court
turns to a consideration of plaintiffs' claims. Under Rule 12(b)(6),
a complaint must include "sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(quoting Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The plausibility
standard is not akin to a 'probability requirement,' but it asks for
more than a sheer possibility that a defendant has acted unlawfully."
Id. "A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."
Id. Moreover, the Court cannot consider allegations that the
plaintiffs raise for the first time in their brief opposing the
motion to dismiss because "it is axiomatic that a complaint may not

be amended by the briefs in opposition to a motion to dismiss."
Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).

Before addressing the merits of plaintiffs' claims, the Court
must consider two threshold issues: res judicata and standing.  As
for res judicata, the Village contends that those claims which are
based on the Village's refusal to allow Bais Yoel to use the Property
as a synagogue, are barred by operation of res judicata.

Under New York and federal law, res judicata applies where "(1)
the previous action involved an adjudication on the merits; (2) the
previous action involved the plaintiffs or those in privity with
them; and (3) the claims asserted in the subsequent action were, or
could have been, raised in the prior action."  Monahan v. N.Y.C.
Dep't of Corr., 214 F.3d 275,285 (2d Cir. 2000) (citations omitted).[2]
Thus, res judicata "prevents a party from litigating any issue or
defense that could have been raised or decided in a previous suit,
even if the issue or defense was not actually raised or decided."
Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992).

In evaluating whether claims are barred by res judicata, the
Court must determine whether the claims involve the same transaction.
Woods, 972 F.2d at 38-39.  The Court, therefore, looks primarily to

---

[2] A federal court "must give to a state-court judgment the same preclusive effect
as would be given that judgment under the law of the State in which the judgment
was rendered."  Mira v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81
(1984).  Thus, the preclusive effect of the previous New York State actions is
governed by New York law.  However, "[t]here appears to be no significant
difference between New York preclusion law and federal preclusion law."  Pike v.
Freeman, 266 F.3d 78, 91 n.14 (2d Cir. 2001), and thus the respective standards
will not be discussed separately.

the facts that underlie the cause of action, as opposed to the legal theory framing the complaint.  Id.  Moreover, while "[i]t is true that res judicata will not bar a suit based upon legally significant acts occurring after the filing of a prior suit that was itself based upon earlier act," nonetheless, where a plaintiff asserts in a later action "nothing more than additional instances of what was previously asserted," the actions arise from the same transaction.  Waldman, 207 F.3d at 113.

Plaintiffs do not dispute that the first two requirements of res judicata are presented here, because the prior cases resulted in final judgments on the merits and involved the same parties or their privies.  See Pl. Mem. at 13-18.  However, they contend that the claims alleged here do not arise from the same transactions that were at issue in the previous cases.  Specifically, plaintiffs argue that "two independent fact patterns" on which Bais Yoel's claims in the instant action are predicated were not raised in the prior litigation: (1) the "construction blitz," and (2) the Village's failure to grant municipal approval for the Property to be used as a synagogue after Justice Owen's decision in Bais Yoel I.[3]  Both "fact patterns," however, were significant issues in Bais Yoel II.  In fact, the plaintiffs obtained a TRO against the construction work in

---

[3] Plaintiffs also raise some new facts in their opposition to the motion to dismiss.  See, e.g., Pl. Mem. 60 (discussing the ZBA's inaction).  As discussed above, the Court cannot consider facts not raised in the Complaint.

Bais Yoel II.[4] Moreover, while the relief plaintiffs seek in this

case is different from the easement they sought in the state court,

that does not affect the Court's res judicata analysis.  See Waldman,

207 F.3d at 110-12 (a plaintiff "cannot avoid the effects of res

judicata by 'splitting' his claim into various suits, based on

different legal theories," or by requesting different forms of

relief).

Accordingly, res judicata bars plaintiff Bais Yoel's claims

regarding the Village's allegedly discriminatory application of

zoning ordinances.  Insofar as plaintiffs' Equal Protection Clause

and Establishment Clause claims are based on application of the

zoning ordinances to the Property, those claims are dismissed with

prejudice.  And since plaintiffs' Free Exercise Clause and RLUIPA[5]

claims are based entirely on the application of zoning ordinances to

the Property, therefore, those claims are also dismissed, in their

entirety, with prejudice.

As for standing, several of plaintiffs' allegations relate to

injuries allegedly suffered by non-parties, and therefore must be

dismissed for lack of standing.  To have standing, a plaintiff must

demonstrate (1) "specific, concrete" facts demonstrating that the

challenged practices directly harmed him or her by causing (2) a

distinct and palpable "injury-in-fact" to a legally cognizable

---

[4] As discussed above, the grant of that TRO was overturned on appeal.

[5] As discussed above, plaintiffs received a full and fair adjudication in state court on the application of the zoning ordinances.

14

interest that is (3) fairly traceable to defendants' conduct and (4) capable of being redressed by a favorable court decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Moreover, standing must be established for each claim asserted. See Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996).  Furthermore, "[i]t is axiomatic that the judicial power conferred by Art. III may not be exercised unless the plaintiff shows that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Blum v. Yaretsky, 457 U.S. 991, 999 (1982).  Therefore, as the Supreme Court held in Blum:

> [i]t is not enough that the conduct of which the plaintiff complains will injure someone. . . . . Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.

Id. (emphasis in original).

Here, the Amended Complaint asserts factual allegations relating to harms allegedly suffered by several non-parties including: municipal fees charged for garbage removal levied against non-parties Keren Chasanim and Congregation Tiv Livov; the KJPS' enforcement of Village noise ordinances against non-party Joel Lieberman; the KJPS' alleged failure to protect non-party Rafael Rabinowitz from attack by groups of UTA schoolchildren; the Village's alleged failure to grant property tax exemptions to non-parties Samuel Eisenberg and Congregation TA; Congregation Yetev's refusal to allow the non-party

15

Pearlstein family to bury their relative Eziel Pearlstein in the main Congregation Yetev cemetery in the Village; the Village's alleged wrongful termination of non-party Lawrence Rossini from his position as a building inspector; and the Village's improper delay in granting non-parties Prag Realty and Lipa Deutsch Certificates of Occupancy for a residential development based on their plans to use a community room for non-religious purposes.

The Court finds unpersuasive plaintiffs' argument that the Kiryas Joel Alliance ("KJA") may assert, in a representative capacity, claims based on harms suffered by its members who are non-parties. As the Second Circuit held in Nnebe v. Daus, 644 F.3d 147, (2d Cir. 2011) "an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983" because § 1983 rights are "personal to those" that are injured. Id. at 156.

Of course, an organization may bring suit on its own behalf "so long as it can independently satisfy the requirements of Article III standing as enumerated in Lujan." Id.; see also N.Y. Civil Liberties Union v. N.Y. City Transit Auth., 652 F.3d 247, 255 (2d Cir. 2011) (organization has standing to sue when it alleges injuries to its own rights as an organization). Therefore, KJA's claim that it had to divert resources from its other activities to provide "security to the dissidents . . . because KJPS was not properly attending to

16

them," Pl. Mem. at 26, does provide standing as to that claim alone.

See Nnebe, 644 F.3d at 156-57 (diversion of resources from an

organization's main activities is a harm that confers standing on

that organization).  Therefore, of the claims discussed above, KJA

has standing only to assert claims related to the KJPS' alleged

failure to protect non-party Rafael Rabinowitz from attack by groups

of UTA schoolchildren.  All of the other claims discussed above are

dismissed with prejudice for want of standing, with the exception of

the Community Room Law claim, which is dismissed without prejudice.

Now that the Court has limited plaintiffs' claims to those for

which they have standing and those that are not barred by res

judicata, the Court turns to a consideration of the merits of the

remaining claims.  The plaintiffs assert three separate violations of

the Equal Protection Clause.[6]  First, plaintiffs allege that

defendants "facilitate [Congregation Yetev]'s blatant violations of .

. . public speech laws while at the same time requiring 'dissidents'

to strictly comply with them." Pl. Mem. at 47. Second, plaintiffs

allege that plaintiffs Waldman and Wolner were falsely arrested and

charged with crimes they did not commit.  Am. Compl. ¶¶ 317-21, 333-

37.  Third, plaintiffs allege that the KJPS discriminatorily refuses

to protect dissidents from violence perpetrated by UTA children.

---

[6] Plaintiffs also brought two other equal protection claims, which are
dismissed for the other reasons discussed above.  The first, relating to zoning
restrictions on the Bais Yoel property, is barred by res judicata.  The second,
relating to the Village's imposition of fees on dissident organizations, Pl. Mem.
at 47-54, is dismissed for lack of standing.

In order to bring an equal protection claim, the plaintiffs first must plausibly allege intentional discrimination on the basis of an impermissible classification such as religion.  See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-65 (1977).  However, a "plaintiff need not show . . . that a government decisionmaker was motivated solely, primarily, or even predominantly" by the improper classification, so long as such classification was "a motivating factor."  United States v. Yonkers, 96 F.3d 600,611-12 (2d Cir. 1996).  Intentional discrimination claims can be proven by, inter alia, pointing to laws that contain express discriminatory classifications, "identify[ing] a facially neutral law or policy that has been applied in an intentionally discriminatory manner," or alleging that a facially neutral statute had an adverse effect and was motivated by discriminatory animus. Brown v. City of Oneonta, 221 F.3d 337 (2d Cir. 2000).  A plaintiff alleging an equal protection claim under one of these theories "generally need not plead or show the disparate treatment of other similarly situated individuals."  Pyke v. Cuomo, 258 F.3d 107, 109 (2d Cir. 2001).  The exception to this rule is for claims alleging selective prosecution, "because courts grant special deference to the executive branch in the performance of the core executive function of deciding whether to prosecute."  Id. (internal quotation marks omitted).

18

Before addressing any of the other aspects of the remaining equal protection claims, an initial question must be answered: have the plaintiffs adequately pled that the actions here were motivated by religious differences?  The Court concludes that the Amended Complaint does not adequately allege that the defendants' actions were motivated by religious differences.  Indeed, the plaintiffs conceded during oral argument that their Amended Complaint largely failed to include such allegations, since it largely centered on a political controversy over who should be the leader of the Satmar Hasidim.  See 8/31/11 transcript at 14-16. The Court cannot consider allegations raised for the first time at oral argument, because the Amended Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).[7]  These claims are dismissed with prejudice.

The Court turns next to the Establishment Clause claims.  The First Amendment directs that "Congress shall make no law respecting an establishment of religion."  U.S. Const. Amend. I.  In Everson v. Board of Educ. of Ewing, 330 U.S. 1 (1947), the Supreme Court stated that:

> The establishment of religion clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or

[7] In any event, nothing raised at oral argument changes the Court's conclusion that these claims must be dismissed.

19

> remain away from church against his will or force him to profess
> a belief or disbelief in any religion. No person can be punished
> for entertaining or professing religious beliefs or disbeliefs,
> for church attendance or non-attendance.

Id. at 15-16 (internal quotation marks omitted). The Supreme Court

recently reaffirmed the principle of neutrality set forth in Everson,

describing it as the "touchstone" of Establishment Clause analysis.

See McCreary Cty. v. ACLU, 545 U.S. 844, 860 (2005).

In determining whether government action violates the

Establishment Clause, the Court applies the familiar three-prong test

espoused in Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971). See

Skoros v. City of New York, 437 F.3d 1, 16-17 (2d Cir. 2006). Under

the so-called Lemon test, "a statute or practice . . . , if it is to

be permissible under the Establishment Clause, [1] must have a

secular purpose; [2] it must neither advance nor inhibit religion in

its principal or primary effect; and [3] it must not foster an

excessive entanglement with religion." County of Allegheny v. ACLU,

492 U.S. 573, 592 (1989)(citing Lemon, 403 U.S. at 613-14).

Here, plaintiffs claim that the Village violates the

Establishment Clause because its governmental affairs are

impermissibly intertwined with those of Congregation Yetev. In

support, plaintiffs make three principal arguments: (1) that the

Mayor of the Village holds a leadership position in Congregation

Yetev, and that his "dual religious and governmental roles" operate

20

to establish an official faith because his religious beliefs trump

his governmental role with respect to his actions as Mayor, see Am.

Compl. ¶ 344-47; (2) that all the other Village officials are members

of Congregation Yetev, and therefore are controlled by the Grand

Rebbe's dictates, id. at 26-27, 46; 3) that the Community Room Law

violates the Establishment Clause in that it had the primary purpose

and effect of advancing religion.   The Court will address each of

those claims in turn.[8]

As to the first two claims regarding overlapping leadership in

the Village and the Congregation, the Supreme Court held in McDaniel

v. Paty, 435 U.S. 618 (1978), that the Establishment Clause does not

bar an individual from holding public office simply because he is a

member of the Clergy.   Id. at 620 (striking down a Tennessee law

barring ministers and priests from holding certain political

offices); see also Grumet, 512 U.S. at 699 ("under McDaniel the Grand

Rebbe [of Kiryas Joel] may run for, and serve on, his local school

board"). Therefore, these two claims are not enough to make out an

Establishment Clause violation.

Finally, as to the Community Room Law, plaintiffs concede that

the law is neutral on its face, see Am. Compl. ¶ 355, but they

---

[8] In their response to the defendants' motion to dismiss, plaintiffs also argue
that "the boundaries of the Village are drawn peculiarly to include only Satmars,
the majority of whom are bound by the edicts of the Grand Rebbe and, therefore,
exercise their franchise in a manner that advances the [Congregation Yetev]
agenda," Pl. Mem. at 34.   As discussed above, the plaintiffs cannot raise new
claims in opposing a motion to dismiss.   Moreover, this claim fails on the merits
because the Supreme Court stated in Grumet that the Village's creation was not
unconstitutional.   512 U.S. at 703 n.7 (plurality); see also id. at 729 (Kennedy,
J., concurring).

contend that "the Village's primary purpose in enacting and enforcing this law, and the law's primary effect," is to advance religion by requiring "residential developers to build religious structures as a condition of obtaining site plan approval, or to pay cash in lieu thereof to be used for the purpose of building the same." Id. ¶ 352. As discussed above, however, plaintiffs currently lack standing to bring a claim related to the Community Room Law. The plaintiffs have not adequately pled that they have suffered an injury as a result of the law, and no developer, including Prag Realty or Lipa Deutsch, is a party in this case. Therefore, this claim is dismissed without prejudice. Plaintiffs are given leave to amend their complaint to include new parties or to adequately plead injury to the current parties. Accordingly, all Establishment Clause claims are dismissed with prejudice, except for the claim relating to the Community Room Law, which is dismissed without prejudice.

The Court turns now to the plaintiffs claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq. As discussed above, this claim is barred by res judicata. Even if it were not, however, this claim would fail on the merits. Plaintiffs allege that the Village violated RLUIPA by refusing to grant Bais Yoel's application to use the Rebitzon's residence as a synagogue. Defendants argue in response that: (1)

plaintiffs' RLUIPA claim is not yet ripe; and (2) plaintiffs fail to state a RLUIPA claim.

The Second Circuit has held that "to establish jurisdiction" over a RLUIPA claim, plaintiffs "have the high burden of proving that we can look to a final, definitive position from a local authority to assess precisely how they can use their property." Murphy v. New Milford Zoning Comm., 402 F.3d 342,347 (2d Cir. 2005) (internal quotation marks and citation omitted).  Thus, a RLUIPA claim generally is not ripe unless and until the zoning and appeals process has been exhausted and a final decision has been rendered by the local zoning authority. See id.

Here, assuming arguendo that the claim is ripe, plaintiffs have failed to state a RLUIPA claim on the merits.  RLUIPA provides a right of action in three circumstances allegedly applicable here -- where a land use regulation or its implementation (i) imposes a "substantial burden" on the plaintiff's free exercise of religion, 42 U.S.C. § 2000cc(a)(1), (ii) discriminates on the basis of religion or religious denomination, 42 U.S.C. § 2000cc(b)(2), or (iii) unreasonably limits religious assembly, 42 U.S.C. § 2000cc(b)(3).

The plaintiffs have failed to allege a "substantial burden" in this case because Bais Yoel has ready alternatives: it presently uses other locations to worship and there are many other locations in the Village where the congregation may meet.  See Fortress Bible Church

23

v. Feiner, 734 F. Supp. 2d 409, 503 (S.D.N.Y. 2010)("when an institution has a ready alternative . . . its religious exercise has not been substantially burdened."). Moreover, plaintiffs' claim that the Village discriminated against Bais Yoel by requiring Bais Yoel to submit site plans fails because, as discussed above, it was the state courts and not the Village that ordered Bais Yoel to seek approval from the Village.[9] Finally, the Amended Complaint does not sufficiently allege facts to show that the Village unreasonably limits Bais Yoel's ability to worship freely in the Village, because the plaintiffs concede that numerous dissident congregations exist within the Village. Accordingly, for this additional reason independent of the bar of res judicata, the RLUIPA claims are again dismissed with prejudice.

The Court now turns to the plaintiffs last remaining claim: a claim alleging conspiracy under Section 1985, 42 U.S.C. § 1985. In order to state a conspiracy claim under Section 1985, "a plaintiff must plead (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of the citizens of the United States." Mian v.

---

[9] Again, the plaintiffs cannot use their opposition to the motion to dismiss to raise new claims or arguments, and thus the Court does not address the new arguments made in the plaintiffs' memorandum. See Pl. Mem. at 62-63.

Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir.
1993) (per curiam).  In addition, the conspiracy must have been
motivated by discriminatory class-based animus.  See Thomas v. Roach,
165 F.3d 137, 146 (2d Cir. 1999).

   In order to properly allege a conspiracy claim under § 1985, the
Complaint must "provide some factual basis supporting a meeting of
the minds, such that defendants entered into an agreement, express or
tacit, to achieve the unlawful end."  Webb v. Goord, 340 F.3d 105,
110 (2nd Cir. 2003) (internal citations omitted).  The complaint here
fails to provide any factual basis to support a meeting of the minds,
either explicit or tacit.  Instead, the complaint merely includes a
conclusory allegation that there was a conspiracy.  This is not
sufficient to survive the defendant's motion to dismiss, and this
claim is therefore dismissed with prejudice.

   The Court has considered plaintiffs' other arguments and finds
them without merit.  In light of the foregoing, the defendants'
motions to dismiss are granted, and all claims are dismissed with
prejudice, except for the Establishment Clause claim relating to the
Community Room Law.  That latter claim is dismissed without prejudice
in order to give the plaintiffs one last chance to plead that claim
adequately.  Because the motions to dismiss all the claims are

granted, defendants' additional motions to strike the demands for punitive damages and equitable relief are denied as moot.[10]

Counsel for all remaining parties[11] should convene a conference call with the Court on November **30**, 2011 at 2 p.m. to schedule dates for any proposed repleading and further proceedings. The Clerk of the Court is directed to close item numbers 26, 29, 34, 37, and 39 on the docket of this case.

SO ORDERED.

Dated: New York, NY
November **28**, 2011

JED S. RAKOFF, U.S.D.J.

---

[10] It is worth noting, however, that municipalities and municipal officials sued in their official capacities are immune from punitive damages under Section 1983. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) ("considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials"); Ivani Contracting Corp. v. City of N. Y., 103 F.3d 257,262 (2d Cir. 1997) (officers sued in official capacity "enjoy the same immunity from punitive damages as the City").

[11] Because defendants Congregation Yetev and Mr. Ekstein are named only in the Conspiracy Count, those parties are dismissed from the action with prejudice.

26